FEDERAL TELEPHONE & TELEGRAPH CO. *v.* ROBINSON.

Injunction — Equity — Jurisdiction — Pleading—Sufficiency—
Lost Bonds—Ownership.

In a suit by a corporation to enjoin defendant from
disposing of certain trust bonds secured by a mortgage
on its property, and praying that he be ordered to deliver
them to plaintiff, allegations established by undisputed
proof that said bonds, although executed, were never is-
sued, that they were sent to the trust company for can-
cellation, that defendant found them and had them in his
possession, that he had attempted to collect some of the
interest coupons then due, and that plaintiff was appre-
hensive that defendant, unless enjoined from doing so,
would sell and dispose of said bonds to persons who
might claim to be innocent purchasers for value, *held*, to
justify a decree that the bonds be delivered to plaintiff;
defendant claiming no interest in said bonds except as a
finder holding them for the proper owner.

Appeal from Calhoun; North (Walter H.), J.   Sub-
mitted January 2, 1923.    (Docket No. 10.)    Decided
March 22, 1923.

Bill by the Federal Telephone & Telegraph Com-
pany against Thomas F. Robinson to enjoin the dis-
posal of certain bonds.   From a decree for plaintiff,
defendant appeals.    Affirmed.

*Mechem, Onen & Mechem,* for plaintiff.

*N. A. Cobb,* for defendant.

Sharpe, J.   The defendant, while assorting waste
paper at the plant of the Michigan Carton Company
in Battle Creek in January, 1919, found therein 26
bonds of the Wellsville Telephone Company, a cor-

poration organized under the laws of the State of
New York, of the face value of $500 each.    These
bonds were all dated January 1, 1902, and would
mature in 20 years.    All of the interest coupons were
attached.    They were a part of a $30,000 issue duly
authorized by the company, secured by a mortgage on
its property, in which the City Trust Company of
Cleveland was named as trustee.    Though duly exe-
cuted, the bonds were never issued.    In 1904 they
were sent by the telephone company to the trust com-
pany for cancellation and discharge of the mortgage.
This the trust company neglected to do and the bonds
in some way became mixed in with its waste paper.
At the request of the defendant, the Central National
Bank of Battle Creek wrote the plaintiff, the successor
of the Wellsville Company, asking the value of one of
the bonds.    Plaintiff's treasurer in reply informed
the bank of the facts above stated.    Investigation
developed the further fact that the trust company had
failed and, after the final accounting had been had,
its worthless papers and documents had been sold as
waste paper.

Plaintiff, on July 23, 1919, filed its bill of complaint
herein, alleging the facts stated and that defendant
was attempting to dispose of some of the interest
coupons, and prayed that defendant be enjoined from
disposing of the bonds and be ordered to deliver them
to plaintiff.    A temporary injunction was issued.    A
copy of this and a copy of the summons issued were
served on defendant on July 23, 1919.    On July 28,
1919, defendant, accompanied by his counsel, Judge
Palmer, went to the office of plaintiff's attorneys and,
after a conference, a stipulation was prepared and
signed by Mr. Onen, representing the plaintiff, and
the defendant personally, reciting the finding of the
bonds by defendant and providing that they should
be deposited with the county clerk to abide the result

of the suit and, if the owner was therein determined, they should be turned over to him and, if found to be of no value, the clerk should destroy them, and that no costs should be taxed against the defendant. No appearance was entered by the defendant. On November 10, 1919, an order *pro confesso* was duly entered and an affidavit of regularity filed. On February 27, 1920, plaintiff filed a petition asking that a commission issue to take testimony in the State of New York. A commission was issued and testimony taken. Thereafter, and on August 25, 1920, Mr. Hamilton entered his appearance as attorney for defendant and on the 28th filed an answer for him. On October 17, 1921, Mr. Cobb was substituted by stipulation. On November 17th a motion was made to set aside the default and for continuance over the term. No order setting aside the default was entered, but Mr. Cobb was permitted to take part in the trial and submitted a brief to the court. The defendant was cross-examined as an adverse witness by plaintiff's counsel and also examined by his own counsel. The trial court entered a decree providing that the bonds, then in the hands of the clerk, be delivered to the plaintiff. No costs were allowed. From this decree defendant appeals.

On this appeal defendant's counsel insists:

(1) That the stipulation was in effect an appearance on the part of the defendant, and,

(2) That the allegations in the bill are not sufficient to support the decree.

No claim is made that any injustice has been done to defendant in the decree made. He testified, "I do not claim to own these bonds, except as a finder of abandoned or lost property, and to hold them for the proper owner." His counsel at the hearing stated to the court, "I am going to admit that there is no title and no defense from the standpoint of the defense of

Mr. Robinson's possession." The undisputed proof shows that the bonds, never having been issued, have no value and the only purpose of their preservation is, by their production and cancellation, to procure a discharge of the mortgage executed to secure their payment. We are, therefore, only concerned in whether the court had jurisdiction to make the decree.

Without discussing whether the stipulation was in legal effect an appearance, it is sufficient to say that it was not so intended. When its terms were discussed by Mr. Onen, representing the plaintiff, and Judge Palmer, representing the defendant, Mr. Onen asked Judge Palmer "if he would appear in the case," and he said: "No, there was no necessity of any appearance in the case. That he had advised Mr. Robinson that he had no defense." The provision in the stipulation that no costs should be taxed against the defendant is also strongly suggestive that he did not intend to contest plaintiff's claim.

The bill alleged the issue of the bonds, that they were sent to the trust company for cancellation, that defendant had found them and had them in his possession, that he had attempted to collect some of the interest coupons then due, and that plaintiff was apprehensive that defendant, unless enjoined from doing so, would sell and dispose of the bonds to persons who might claim to be innocent purchasers of them for value. It also alleged that plaintiff had conveyed a part of the property described in the trust mortgage securing payment of the bonds to the New York Telephone Company and had covenanted that such property was free and clear of all incumbrances, etc. These allegations, established as they were by the undisputed proofs, justified the decree made.

It is affirmed, with costs to plaintiff.

WIEST, C. J., and FELLOWS, MCDONALD, CLARK, BIRD, MOORE, and STEERE, JJ., concurred.